LEWIS S. SEELEY et al., Appellants, v. DEAN C. OSBORNE, Respondent.

Contract — construction of contract for exchange of stock of corporations and to furnish merchandise as part consideration for such exchange — erroneous finding by Appellate Division — when party injured by breach of such contract may recover the damages caused thereby.

The lower courts found that an unwritten contract between plaintiffs and defendant provided among other things that as part consideration for the sale and exchange of certain shares of stock in two corporations, defendant was, to cause one of the companies to sell plaintiffs certain articles at a fixed price. The shares of stock referred to were transferred and plaintiffs gave a receipt stating that the stock was received in full payment of that transferred by them. This was supplemented by another agreement relating exclusively to the stock. Defendant failed to carry out the agreement to furnish the designated articles at the fixed price according to its terms and plaintiffs brought this action to recover damages for the breach. The Appellate Division found that the contract was in writing and provided exclusively for the exchange of the shares of stock. Held, that this finding is not supported by the evidence; that the paper first referred to is a mere receipt and open to explanation as such and that plaintiffs were free to prove the contract which was, in fact, made and acted upon, and plaintiffs are entitled to recover for

the breach of contract upon the other evidence, which is direct, positive, clear, free of suspicion and corroborated by the subsequent acts of the parties.

*Seeley* v. *Osborne,* 161 App. Div. 844, reversed.

(Argued March 12, 1917; decided April 17, 1917.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 24, 1914, which reversed a determination of the Appellate Term modifying and affirming as modified a judgment of the City Court of the city of New York in favor of plaintiffs and directed judgment in favor of defendant upon the merits.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Bertram L. Marks, Louis Lowenstein* and *Clarence S. Nettles* for appellants. The oral agreement between the parties constituted a perfect and complete contract within itself, enforceable, and entitles plaintiffs to the judgment awarded them. (*Foster* v. *Bookwalter,* 152 N. Y. 166; *Stokes* v. *Stokes,* 155 N. Y. 581; *Cook* v. *N. Y. E. R. R. Co.,* 144 N. Y. 115; *Lowery* v. *Erskine,* 113 N. Y. 52; *Barnard* v. *Gantz,* 140 N. Y. 249; *Worthington* v. *Herman,* 89 App. Div. 627; 180 N. Y. 559; *Gillette* v. *Bank of America,* 160 N. Y. 555; *Central Trust Co.* v. *West India Improvement Co.,* 169 N. Y. 314; *Insurance Co.* v. *Duttam,* 95 U. S. 269; 1 Elliott on Contracts, 941; Wigmore on Evidence, 2432; *Komp* v. *Raymond,* 175 N. Y. 102; *Mance* v. *Hossington,* 205 N. Y. 33; *Eighmie* v. *Taylor,* 98 N. Y. 288; *Juillard* v. *Chaffee,* 92 N. Y. 529.)

*Alexander Thain* and *Lilian Herbert Andrews* for respondent. The contract in writing covered the entire transaction between the parties and is not to be varied by parol. (*Studwell* v. *Bush,* 206 N. Y. 416; *Thomas* v. *Scutt,* 127 N. Y. 133; *Van Brunt* v. *Day,* 17 Hun, 166;

*Baker* v. *Higgins*, 21 N. Y. 397; *Lossing* v. *Cushman*, 195 N. Y. 386; *Coon* v. *Knapp*, 8 N. Y. 402; *Chapman* v. *Railroad Co.*, 7 Phil. [Penn.] 204; *Ennis* v. *Pullman, etc., Co.*, 165 Ill. 161.)

Collin, J. The action is to recover the damages suffered by the plaintiffs because of the breach by the defendant of an alleged contract between the parties. The City Court of the city of New York rendered a judgment in favor of plaintiffs for $4,042.15, which the Appellate Term, conforming its amount with the jurisdiction of the court, reduced to $2,000.00. The Appellate Division reversed the judgment and directed the dismissal of the complaint upon the merits.

The disagreement of the Appellate Division with the decisions of the lower courts stands, primarily, upon its finding, differing from that of those courts as to what the contract in question was. The lower courts held that it was unwritten and obligated the plaintiffs to sell and transfer to the defendant forty-five shares of the common stock of Dentists' Supply Company, a corporation, and obligated the defendant to purchase those shares and in payment transfer to the plaintiffs eleven hundred and ninety shares of the stock of the Butterick Painless Dental Company, a corporation, and cause the Dentists' Supply Company to sell to the plaintiffs from time to time as they wanted them ten thousand sets of artificial teeth at the rate of forty-five cents for each set. The Appellate Division found that the contract was in writing and provided exclusively for the exchange of the shares of stock. The breach of the contract complained of and recovered for was the undisputed refusal of the supply company to sell to the plaintiffs seven thousand eight hundred and thirty sets of teeth. We are to determine whether or not the evidence is fairly capable of sustaining the finding of the Appellate Division. (*Union Trust Company of Rochester* v. *Oliver*, 214 N. Y. 517.)

The plaintiff Angele Seeley testified, in effect, that a few days prior to September 16, 1903, the defendant sought to purchase the shares of stock held by the plaintiffs and offered for them $17,500 in cash, or $15,500 in cash and the privilege to take as the plaintiffs wanted them ten thousand sets of teeth from the Dentists' Supply Company at the price of forty-five cents a set; neither proposition was then accepted; on September 16, 1903, the defendant offered in the place of the $15,500 in cash the shares of stock held by him — nearly the entire of the capital stock — of the Butterick Painless Dental Company and the privilege, as stated, in regard to the teeth; the plaintiffs then accepted the proposition and the agreement was consummated; thereafter on September 16, 1903, the shares of stock were reciprocally transferred and this writing was signed and delivered to defendant by the plaintiffs: "New York, September 16th, 1903. Received of D. C. Osborne eleven hundred and ninety (1190) shares of the capital stock of the Butterick Painless Dental Company of Brooklyn, New York, free and clear, in exchange in full payment of forty-five (45) shares of the common stock of Dentists' Supply Company of New York." The defendant and the plaintiff Lewis S. Seeley, "president of the Butterick Painless Dental Company," subsequently executed a writing dated September 22, 1903, providing that the defendant was empowered through the next following six months to negotiate for the sale of the stock of the dental company for a sum not less than $15,500 net for Seeley; Seeley to turn over to the defendant, in case he failed to carry through the negotiation, the company free and clear for his actual cash investment. The admissions of the defendant, made in and through his testimony as a witness in his own behalf in an action by the plaintiffs against himself to recover the damage flowing from the deceit of the defendant inducing the plaintiffs to accept as they did the shares of stock of the dental company,

were received in evidence here and in effect stated: On September 15, 1903, the defendant asked the plaintiffs for two options for the purchase of their forty-five shares of supply company stock, one at $17,500 cash, the other, at the transfer of the dental company stock held by the defendant, and the right to the plaintiffs to purchase of the supply company as they from time to time wanted them ten thousand sets of teeth at forty-five cents for each set. "The next day he (the plaintiff Seeley) called me up and accepted the latter proposition to take the Butterick Painless Dental Company's stock, and to get, from time to time, what teeth he wanted till he had ten thousand sets at forty-five cents a set;" after this conversation over the telephone and a subsequent conversation between the plaintiff Lewis S. Seeley and the defendant, the latter went, taking the certificate or certificates for his shares of the stock of the dental company, to the house of the plaintiffs; "when I got there, he (Lewis S. Seeley) went into the office, talked with his wife, and brought out forty-five shares of stock of the Dental Supply Company, signed the receipt, and I gave him 1190 shares of stock of the Butterick Painless Dental Company and signed a receipt." The defendant was not a witness upon the present trial. The plaintiff Angele Seeley testified further that between September 16, 1903, and September 12, 1911, the supply company delivered to the plaintiffs as they wanted them two thousand one hundred and seventy sets of teeth at forty-five cents a set, and have continuously refused, since September 12, 1911, under tenders of payment at the rate of forty-five cents a set, to make a further delivery. The damages awarded the plaintiffs by the trial court were for the refusal to deliver the seven thousand eight hundred and thirty sets undelivered of the ten thousand sets. The Appellate Division found as a fact: "That said receipt of September 16, 1903, and said supplemental agreement of September 22, 1903, together constituted the entire contract between

the parties, and in them all prior negotiations between the parties were merged," and reversed the findings in contradiction therewith of the trial court.

This finding of the Appellate Division has, in the eye of the law, no support in the evidence. We do not overlook the statement in the receipt signed by the plaintiffs that the shares of the stock of the dental company were " in full payment " of the shares of the stock of the supply company. It is true that the statement, considered in and of itself, is *prima facie* evidence, as the admission or declaration of the plaintiffs, of its truth. The writing in which it is does not purport to be nor is it contractual. Neither its language nor the circumstances under which it was given indicate that it possesses any contractual feature. It is uniformly defined by the evidence as and is in character a mere receipt. Its nature is not changed by the fact that in form it acknowledges "full payment" in the shares of stock. A receipt purporting to be in full, thus indicating the consummation of a previous contract or transaction, is a writing open to explanation or contradiction, and thus the rule is although the statements were designedly erroneous or false. The plaintiffs were wholly free to prove the contract which in fact was made and acted upon. The contract existed independently of the receipt. The receipt did not extinguish any right of the plaintiffs. It was their written declaration of an extinguishment. The rule that parol evidence cannot vary the terms of a written contract, which is presumed to express the final agreement of the parties, regardless of what had previously been said upon the subject, is not apposite. (*Komp* v. *Raymond*, 175 N. Y. 102; *Mance* v. *Hossington*, 205 N. Y. 33; *Buswell* v. *Poineer*, 37 N. Y. 312; *Bostwick* v. *Baltimore & Ohio R. R. Co.*, 45 N. Y. 712; *Halligan* v. *Keller*, 167 Iowa, 72; *Randall* v. *Kelsey*, 46 Vt. 158; *National Trust & Credit Co.* v. *Polk*, 123 Ark. 24; *Scruggs* v. *Bibb*, 33 Ala. 482; *Williams* v. *Shows* [Ala., Nov. 1916], 73 So.

Rep. 99.) The principle of law upon which the findings of the Appellate Division was based was erroneously invoked and applied.

The admission in the receipt, considered in and of itself, constituted evidence that the contract did not create the right to the plaintiffs of purchasing the teeth. There was not, however, at its closing, a conflict in the evidence unless men of ordinary reason and fairness would have been justified in finding from it that the plaintiffs received the defendant's shares of stock as payment in full for their own shares. (*Matter of Case*, 214 N. Y. 199; *Benoit* v. *Troy & Lansingburgh R. R. Co.*, 154 N. Y. 223.) The evidence here does not reasonably support opposite conclusions of fact. The admission in the receipt has not the slightest support in evidence, inference or circumstance. It can prevail only by the rejection of all the other evidence, which is direct, positive, clear, free of suspicion and corroborated by the subsequent acts of the parties. We cannot conceive of any reason which would uphold such rejection or characterize it as other than arbitrary and unreasonable. When such a condition exists at the close of the evidence, there is, in legal intendment, no conflict in it.

We have considered the other grounds urged by the respondent in support of the order of the Appellate Division and find them ill-founded.

The order of the Appellate Division should be reversed and that of the Appellate Term affirmed, with costs to the appellants in the Appellate Division and this court.

HISCOCK, Ch. J., CARDOZO, POUND, CRANE and ANDREWS, JJ., concur; CUDDEBACK, J., not voting.

Order reversed, etc.